UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOE (S.M.A.),[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0915-B |
| | § | |
| SALESFORCE, INC., BACKPAGE.COM, | § | |
| LLC, and CARL FERRER, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Salesforce, Inc.'s ("Salesforce") Motion to Dismiss (Doc. 58).

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

I.

BACKGROUND

Plaintiffs are sex-trafficking victims. Plaintiffs claim that their individual traffickers advertised

and sold them for sex on Defendant Backpage.com, LLC ("Backpage")'s online platform. Doc. 51,

Am. Compl., ¶ 94. They further claim that Salesforce provided Backpage with the technology and

services needed to expand Backpage's illicit business and evade detection from law enforcement. *Id.*

¶¶ 13–14.

---

[1] On June 20, 2023, the Court consolidated the following cases: 3:23-cv-915, 3:23-cv-918, 3:23-cv-919, 3:23-cv-920, 3:23-cv-921, 3:23-cv-923, 3:23-cv-924, 3:23-cv-925, 3:23-cv-927, 3:23-cv-928, 3:23-cv-929, 3:23-cv-930, 3:23-cv-931, 3:23-cv-932, 3:23-cv-933, 3:23-cv-935, 3:23-cv-936, 3:23-cv-937, 3:23-cv-939, 3:23-cv-940, 3:23-cv-941, 3:23-cv-943, 3:23-cv-944, 3:23-cv-1322, 3:23-cv-1324, and 3:23-cv-1325. *See* Doc. 23, Mem. Op. & Order, 5–6. On August 22, 2023, the Court consolidated four additional cases: 3:23-cv-1712, 3:23-cv-1713, 3:23-cv-1714, 3:23-cv-1715. Doc. 38, Order. This case was designated as the lead case. Doc. 23, Mem. Op. & Order, 6.

Backpage was an online marketplace used by sex traffickers to advertise and sell individuals, including Plaintiffs, for sex acts. Doc. 51, Am. Compl., ¶¶ 7, 61–62, 94. From 2013 to 2015, "Backpage earned over 99% of its revenue from adult ads, a substantial percentage of which came directly from on-line prostitution and sex trafficking." *Id.* ¶ 11. Specifically, sex traffickers used Backpage to "post" particular victims for sale, which enabled traffickers to "reach entirely new audiences[] [and] evade law enforcement." *Id.* ¶¶ 59, 82. Since 2008, "Backpage . . . had been publicly identified by law enforcement, [the] United States Attorneys General, and every United States Governor as the biggest and most notorious sex trafficking and prostitution promoting website in the United States." *Id.* ¶ 61.

Backpage could not scale its operations "without operational support, marketing innovation, and guidance." *Id.* ¶ 79. Backpage sought out a partner that could "assist the vision of its growth as the leader in online sex sales as well as concealing such activity including the moving of its operations offshore to evade law enforcement." *Id.* Backpage allegedly found such a partner in Salesforce. *Id.* ¶ 78. Salesforce sells cloud-based Customer Relationship Management ("CRM") software to businesses throughout the United States. *Id.* ¶¶ 13, 153.

Plaintiffs allege that Salesforce representatives worked with Backpage to build out Backpage's CRM software in order "to promote, develop, and grow its internet based online selling of sex, sex trafficking, and compelled prostitution." *Id.* ¶ 113. Although the platform was created for Backpage's benefit, "Salesforce ultimately retained control . . . actively serviced the platform, and accessed Backpage's data." *Id.* ¶ 111.

Aside from the CRM platform, Salesforce also provided Backpage with access to Pardot, "a marketing automation solution," which employs a "specialized algorithmic formula, [and] creates

meaningful connections, generate[s] more pipeline, and empower[s] sales to close more deals." *Id.* ¶¶ 107, 162. Salesforce allegedly "provided and paid for implementation and build-out of Pardot for Backpage." *Id.*

Plaintiffs claim that they were trafficked through Backpage with the help of Salesforce's technology and services. According to Plaintiffs, Backpage used Salesforce's software to analyze "traffickers' and pimps' data across multiple sources and channels," in order "to help Backpage understand the traffickers better and predict[] how they will feel and act so Backpage could prepare the most effective outreach." *Id.* ¶ 153. In turn, Backpage used this information to generate targeted "campaigns to advertise and promote illegal prostitution." *Id.* Thus, when "trafficker[s] paid money to Backpage to post ads selling" Plaintiffs for sex, Backpage used Salesforce's software to target specific consumers with those ads, which allegedly facilitated Plaintiffs' trafficking. *See id.* ¶¶ 139–40.

The Court previously dismissed Plaintiffs' claims against Salesforce without prejudice. Doc. 48, Mem. Op. & Order, 39. Plaintiffs filed an Amended Complaint and added the following new allegations.[2] Many advertisements on Backpage's website included symbols associated with prostitution. Doc. 51, Am. Compl., ¶ 67. For example, the advertisements included different "[c]ode words for intercourse" or used a term like "roses" instead of dollars. *Id.* The advertisements often included pictures of the women being offered for commercial sex. *Id.* ¶ 68.

---

[2] Salesforce argues that only S.M.A. filed an Amended Complaint, which means the plaintiffs in the cases that were consolidated with this case have abandoned their claims. Doc. 59, Br. Mot., 4–5. This would be an absurdly unfair result. In the interest of drawing all reasonable inferences in favor of the Plaintiffs, the Court will construe most of the allegations in the Amended Complaint to apply to each Plaintiff in the consolidated cases.

S.M.A. was advertised for commercial sex on Backpage. *Id.* ¶ 94. After seeing S.M.A.'s advertisements on Backpage's website, a police detective investigating human trafficking determined that S.M.A. was being trafficked because her advertisements had "[t]he indicia of sex trafficking." *Id.* ¶ 143. The detective subsequently helped S.M.A. escape her trafficker. *Id.*

The United States Senate released a report in 2017 called "Backpage.com's Knowing Facilitation of Online Sex Trafficking." *Id.* ¶ 97. There, Backpage employees admitted that the company would sanitize illegal transactions and "coach[] its customers on how to post 'clean'-looking advertisements for illegal transactions." *Id.* This report was "covered by every major news network across the country." *Id.* "Salesforce employees even discussed the impact of developing sex trafficking regulations on Backpage's business model." *Id.* ¶ 89.

S.M.A. initiated the present litigation against Defendants on May 1, 2023. *See generally* Doc. 1, Compl. Plaintiffs assert a claim under 18 U.S.C. § 1595 and a claim under Chapter 98 of the Texas Civil Practice and Remedies Code. Doc. 51, Am. Compl., ¶¶ 150–63. As relevant to this Order, Plaintiffs allege that Salesforce is liable under § 1595(a) because it knowingly benefited from its participation in a venture with Backpage that violated sex trafficking laws as to Plaintiffs. *Id.* ¶¶ 150–53. They further allege that Salesforce's conduct also violated the Texas law against human trafficking. *Id.* ¶¶ 154–63. Salesforce moves to dismiss Plaintiffs' claims against Salesforce, arguing that Plaintiffs have failed to state a claim. *See generally* Doc. 59, Br. Mot. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration in original) (citation omitted). But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration omitted) (citation omitted).

# III.

# ANALYSIS

The Court grants in part and denies in part Salesforce's Motion to Dismiss. The Court first concludes that Plaintiffs plausibly stated a claim under 18 U.S.C. § 1595. Specifically, Plaintiffs sufficiently alleged that Salesforce should have known that its venture with Backpage violated § 1591 as to Plaintiffs. The Court then concludes that Plaintiffs failed to state a claim under Chapter 98 of the Texas Civil Practice and Remedies Code because Plaintiffs have not alleged that Salesforce had actual knowledge of their trafficking.

A.    *Plaintiffs Sufficiently Pleaded that Salesforce Had Constructive Knowledge that Plaintiffs Were Advertised in Violation of 18 U.S.C. § 1591.*

18 U.S.C. § 1595 creates a civil cause of action for victims of § 1591 violations. Under § 1591, it is a criminal offense to knowingly "recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] . . . a person" with knowledge that the victim will be compelled to commit a commercial sex act through force, threats of force, fraud, or coercion. Where a person has been trafficked in violation of § 1591, she may sue those responsible under § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of . . . [§ 1591]) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Thus, § 1595 allows a plaintiff to sue their trafficker and anyone who knowingly participates in trafficking them.

Plaintiffs bring a § 1595 participant liability claim against Salesforce. To prevail on such a claim, a plaintiff must, as a threshold matter, demonstrate that she is a "victim" of a § 1591 violation. *Id.* §§ 1595(a), (d). If she is, the plaintiff must then prove the following elements: (1) a venture has engaged in an act in violation of § 1591, (2) the defendant participated in that venture, (3) the defendant knew or should have known that the venture had violated § 1591, and (4) the defendant knowingly benefited from its participation. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553 (7th Cir. 2023); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021). Here, Plaintiffs allege they were advertised on Backpage's website in violation of § 1591. Doc. 51, Am. Compl., ¶¶ 147–51.

The Court previously found that Plaintiffs included sufficient allegations for the first, second, and fourth elements of their § 1595 claims against Salesforce. Doc. 48, Mem. Op. & Order, 38. However, Plaintiffs failed to adequately plead that Salesforce knew or should have known that the venture had violated § 1591 as to Plaintiffs. *Id.* at 38–39. Salesforce argues that Plaintiffs have again failed to plead that Salesforce had constructive knowledge of Plaintiffs' trafficking. The Court disagrees.

The Court previously held that, under § 1595(a), a plaintiff must plead that the defendant knew or should have known its venture violated § 1591 as to the plaintiff. Doc. 48, Mem. Op. & Order, 32–33. Here, that means that Plaintiffs must allege that Salesforce knew that its venture with Backpage violated § 1591 as to each Plaintiff. Thus, Plaintiffs must plausibly allege that Salesforce knew or should have known Backpage violated § 1591 with respect to the advertisements of Plaintiffs. *See* 18 U.S.C. § 1591(a)(1); *see also Red Roof Inns*, 21 F.4th at 726 ("Knowledge requires an awareness or understanding of a fact or circumstance. . . . [and] [c]onstructive knowledge . . . is that

knowledge which one using reasonable care or diligence should have." (citations and alterations omitted)).  Then the pleadings must plausibly allege that Salesforce knew or should have known (1) that each Plaintiff was advertised and (2) that each Plaintiff would be forced to engage in commercial sex acts by illicit means. *See id.*

To determine whether Plaintiffs adequately alleged that Salesforce should have known the venture violated § 1591 as to Plaintiffs, the Court will first determine whether Salesforce should have known—i.e., whether it had constructive knowledge—that Backpage violated § 1591 with respect to the advertisements of the Plaintiffs. The Court will then address whether Salesforce had constructive knowledge that each advertisement of the Plaintiffs violated § 1591.

1.  Salesforce Should Have Known that Backpage Violated § 1591.

The Court must first decide whether Plaintiffs have alleged sufficient facts to allow the Court to draw the reasonable inference that Salesforce should have known Backpage violated § 1591 with respect to Plaintiffs' advertisements. There is a crucial distinction between knowledge that sex traffickers used a website and knowledge that the website itself is a sex trafficker. Participant liability under § 1595 is only available where the participant "knew or should have known [the venture] has engaged in an act in violation of [§ 1591]." 18 U.S.C. § 1595(a). Thus, the fact that Salesforce may have had knowledge that sex traffickers used Backpage to violate § 1591 is insufficient to state a claim because Salesforce did not participate in a venture with these traffickers. *See id.* ("An individual who is a victim of a violation of this chapter may bring a civil action against . . . whoever knowingly benefits . . . *from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter.*" (emphasis added)). Nor does such knowledge that traffickers used Backpage to violate § 1591 support the inference that Salesforce knew or should have known that

-8-

Backpage itself was engaging in sex trafficking violations, let alone with respect to the Plaintiffs' particular advertisements. *See Red Roof Inns*, 21 F.4th at 726.

The Court previously held that Plaintiffs must allege that Backpage had actual knowledge that each Plaintiff would be forced to engage in commercial sex acts by illicit means. Doc. 48, Mem. Op. & Order, 37. Without this showing, Plaintiffs cannot plead that Salesforce participated in a venture which violated § 1591 as to Plaintiffs. *See* 18 U.S.C. §§ 1591(a), 1595(a); *see also G.G.*, 76 F.4th at 553 ("Backpage violated Sections 1591(a)(1) and (a)(2) when it advertised G.G. for sale after learning that she was a minor and financially benefited from participation in her street-level trafficking."). Then, Plaintiffs must allege that Salesforce had constructive knowledge of Backpage's violation. *See* 18 U.S.C. § 1595(a); *see also Red Roof Inns*, 21 F.4th at 726 ("Knowledge requires an awareness or understanding of a fact or circumstance. . . . [and] [c]onstructive knowledge . . . is that knowledge which one using reasonable care or diligence should have." (citations and alterations omitted)). And to do this, Plaintiffs must connect the facts establishing Backpage's knowledge of Plaintiffs' being sex trafficked through its website to Salesforce.

The Court finds that Plaintiffs have alleged enough facts to allow the Court to draw the reasonable inference that Backpage had actual knowledge of the Plaintiffs' trafficking, and that Salesforce had constructive knowledge that Backpage violated § 1591.

> *i. Plaintiffs sufficiently alleged that Backpage had actual knowledge of the Plaintiffs' trafficking.*

The United States Senate released a report in 2017 called "Backpage.com's Knowing Facilitation of Online Sex Trafficking." Doc. 51, Am. Compl., ¶ 97. There, Backpage employees admitted that the company would sanitize illegal transactions and "coach[] its customers on how to post 'clean'-looking advertisements for illegal transactions." *Id.* Thus, Backpage facilitated sex

trafficking by helping traffickers hide the criminality of their advertisements. *Id.* Backpage then had possession of the Plaintiffs' advertisements when they were posted on the Backpage website. *Id.* ¶¶ 141–42. These facts allow the Court to draw the reasonable inference that Backpage had actual knowledge of the Plaintiffs' trafficking.

> ii. *Plaintiffs have adequately alleged that Salesforce should have known Backpage violated § 1591 with respect to Plaintiffs.*

Next, the Court concludes that Plaintiffs have adequately alleged that Salesforce should have known that Backpage violated § 1591. As the Court discussed above, Salesforce had a continuous business relationship with Backpage. Doc. 51, Am. Compl., ¶ 97. The Senate publicly released a report that determined Backpage was knowingly facilitating sex trafficking by helping traffickers conceal the illegality of their advertisements. *Id.* Importantly, the report was "covered by every major news network across the country." *Id.*

Additionally, "Salesforce employees even discussed the impact of developing sex trafficking regulations on Backpage's business model." *Id.* ¶ 89. Notably, the employees are alleged to have discussed how Backpage would be impacted by anti-*trafficking* laws, not simply anti-*prostitution* laws. Plaintiffs are able to connect Backpage's knowledge of trafficking to Salesforce by alleging that Salesforce employees discussed how anti-trafficking laws would impact Backpage while national outlets covered how Backpage, one of Salesforce's longtime customers, knew that it was advertising trafficking victims.

However, allegations that Salesforce should have known that Backpage knew some advertisements on its website violated § 1591 do not necessarily establish that Salesforce should have known Backpage violated § 1591 with respect to the specific advertisements of Plaintiffs. But widespread knowledge that Backpage was facilitating trafficking on its website allows the Court to

draw the reasonable inference that Salesforce should have known Backpage violated § 1591 with respect to Plaintiffs' advertisements. The Senate Report said that Backpage helped its customers conceal the illegality of their advertisements. *See* Doc. 51, Am. Compl., ¶ 97. This Senate Report received extensive coverage by national news outlets. *Id.* And Salesforce employees knew that anti-trafficking legislation would impact Backpage's business model. *Id.* ¶ 89. Taking these facts as true, Salesforce would have reason to think that any time it saw an advertisement on Backpage's website that violated § 1591, Backpage violated § 1591 with respect to that specific advertisement. Thus, the Court concludes that if it is plausible that Salesforce should have known that Plaintiffs were advertised on Backpage in violation of § 1591, Salesforce also should have known that Backpage violated § 1591 with respect to those advertisements.

   2.   <u>Salesforce Had Constructive Knowledge that Plaintiffs' Advertisements Violated § 1591.</u>

   Plaintiffs have adequately alleged that Salesforce should have known of the advertisements of the Plaintiffs violated § 1591. As discussed above, to survive Salesforce's Motion to Dismiss, Plaintiffs must plausibly allege that Salesforce knew or should have known (1) that each Plaintiff was advertised and (2) that each Plaintiff would be forced to engage in commercial sex acts by illicit means. *See* 18 U.S.C. § 1591(a)(1); General knowledge of sex trafficking violations often informs the constructive knowledge analysis. *See Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 839 (C.D. Cal. 2021); *Doe #1 v. MG Freesites*, 676 F. Supp. 3d 1136, 1165 (N.D. Ala. 2022). In the context of this case, it is not necessary to show the participant had actual knowledge of the Plaintiffs' identity or even saw the advertisement in question—what matters is whether the participant should have seen the advertisements and whether the participant should have known these advertisements violated § 1591. *See e.g.*, *MG Freesites*, 676 F. Supp. 3d at 1165.

To determine whether a participant has constructive knowledge of the specific § 1591 violation sued upon, courts look at the totality of the circumstances alleged. *See Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) ("[W]e give attention to the whole body of allegations as circumstantially supplying meaning to particular acts."). Where the underlying sex trafficking violation occurs through the internet, courts have considered the following facts relevant to the constructive knowledge inquiry: (1) whether the participant was aware of a pervasive sex trafficking problem on its platform (2) whether the defendant implemented policies to prevent sex trafficking (3) whether the participant had access to the objectionable conduct; and (4) whether the objectionable conduct had apparent indicia of sex trafficking. *See Mindgeek USA*, 558 F. Supp. 3d at 839; *MG Freesites*, 676 F. Supp. 3d at 1165.

The Central District of California's decision in *Doe v. Mindgeek* is illustrative. In that case, defendants, pornographic websites, were sued after the minor plaintiff's ex-boyfriend posted an explicit video of her on the defendants' websites. *Mindgeek USA*, 558 F. Supp. 3d at 832, 839. The court determined that the websites should have known that the video of plaintiff violated § 1591 because the defendants reviewed, approved, and featured the video on their platforms, and the video itself used "the word 'teen' in its title and was categorized as teen pornography." *Id.* at 839. Under these circumstances, the court concluded that plaintiff had plausibly alleged that the websites had constructive knowledge of the specific § 1591 violation sued upon. *Id.*

The Court previously found that Salesforce had constructive knowledge that each Plaintiff was advertised on Backpage. Doc. 48, Mem. Op. & Order, 35–36. While Salesforce argues that the Court should re-examine this finding in light of new facts alleged in the Amended Complaint, Doc. 63, Reply, 3, the Court declines to revisit its prior ruling here.

Next, Plaintiffs sufficiently pleaded that Salesforce should have known Plaintiffs would be forced to engage in a commercial sex act. While a close call, the Court concludes that Plaintiffs have alleged three sets of facts that, taken together, plausibly allege Salesforce should have known Plaintiffs would be forced to engage in a commercial sex act.

First, Plaintiffs allege that a detective investigating human trafficking saw one of S.M.A.'s advertisements and concluded that she was a trafficking victim. Doc. 51, Am. Compl., ¶ 143. Specifically, the officer concluded she was being trafficked because "[t]he indicia of sex trafficking were so evident in [S.M.A.'s] advertisements." *Id.* Plaintiffs can sufficiently allege that Salesforce should have known their advertisements violated § 1591 by alleging facts demonstrating that the advertisements had apparent indicia of sex trafficking. *See Mindgeek USA,* 558 F. Supp. 3d at 839; *MG Freesites*, 676 F. Supp. 3d at 1165. Here, Plaintiffs alleged that someone who saw the advertisements of S.M.A. concluded they had obvious indicia of human trafficking, which means the Court can draw the reasonable inference that her advertisements had apparent indicia of human trafficking. *Cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("A plaintiff can allege that objects dropped in water generally get wet; the defendant dropped an object in water; and that it is therefore highly likely the object got wet."). The Court is construing the allegations in the Amended Complaint to apply to each Plaintiff, so the Court will assume, for the purposes of deciding this Motion to Dismiss, that each Plaintiff's advertisements included similar indicia of human trafficking as S.M.A.'s.

Second, Plaintiffs allege that Salesforce knew Backpage had a sex trafficking problem on its website. *See* Doc. 51, Am. Compl., ¶¶ 89–93, 130–34. Further, Salesforce employees knew that anti-trafficking legislation would hurt Backpage's business model. *Id.* ¶ 97. And general knowledge of sex

trafficking violations can help support an inference of constructive knowledge as to specific victims. *See Mindgeek USA Inc.*, 558 F. Supp. 3d at 839.

Third, Plaintiffs have alleged that they were advertised for commercial sex on Backpage. Doc. 51, Am. Compl., ¶ 94. Plaintiffs' Amended Complaint contains several allegations describing some of the advertisements that were available on Backpage. Doc. 51, Am. Compl., ¶¶ 66–73. These advertisements included various symbols and messages that appear to be consistent with commercial sex, such as dollar signs and explicit messages. *Id.* ¶¶ 67–70. The fact that Salesforce was aware of a sex trafficking problem on Backpage's website combined with the fact that Plaintiffs' advertisements indicated they were being advertised for commercial sex further suggests that Salesforce should have known Plaintiffs were forced to engage in a commercial sex act. *See Mindgeek*, 558 F. Supp. at 839.

The Court notes that each of these facts taken in isolation might fail to state a § 1595 claim. However, the totality of the circumstances alleged is sufficient to plausibly allege that Salesforce should have known Plaintiffs were forced to engage in a commercial sex act. *See Ricchio*, 853 F.3d at 557 (considering the totality of the circumstances rather than considering facts in isolation).

Salesforce argues that Plaintiffs' advertisements only indicate that Plaintiffs were being advertised for commercial sex, but that they do not suggest the Plaintiffs would be forced to engage in a commercial sex act. Doc. 59, Br. Mot., 8–9. Salesforce is correct that knowledge that Plaintiffs were advertised for sex does not, by itself, amount to knowledge of a violation of § 1591. *See* 18 U.S.C. § 1591(a). Section 1591 only criminalizes the advertising of an adult person with the knowledge "that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act." *Id.* Thus, Salesforce's knowledge that Plaintiffs were advertised

for sex does not necessarily permit the inference that Salesforce knew that these advertisements violated § 1591. *See id.*

However, Plaintiffs have not simply alleged that Salesforce should have known they were advertised for commercial sex in isolation. Salesforce was aware that Backpage had a rampant sex trafficking problem on its website. Doc. 51, Am. Compl., ¶¶ 89–93, 130–34. Additionally, they have also alleged that a detective was able to immediately conclude S.M.A. was being forced to engage in commercial sex solely based on the contents of her advertisements. *Id.* ¶ 143. These facts, when considered together, are sufficient to plausibly state a claim under § 1591.

Salesforce further argues that a detective determining S.M.A. was trafficked is insufficient to allege that Salesforce should have known she was being trafficked. Doc. 63, Reply, 6–7. Salesforce contends that the detective likely has more experience than Salesforce with identifying trafficking victims. *Id.* While it is likely true that the detective had more experience than Salesforce with identifying trafficking victims, that does not defeat the reasonable inference that S.M.A.'s advertisements had obvious indicia of human trafficking. Importantly, the Court did not rely on the fact that the detective identified S.M.A. as a trafficking victim to infer that Salesforce should have known S.M.A. was trafficked. Instead, the Court concluded that this allegation indicated that the advertisements of S.M.A. had obvious indica of human trafficking, which suggests Salesforce should have known S.M.A. was forced to engage in a commercial sex act. Therefore, the detective having more experience with identifying trafficking victims than Salesforce does not defeat the reasonable inference that Salesforce should have known Plaintiffs' advertisements violated § 1591.

Salesforce lastly speculates that the detective likely "had other information gained through an investigation." Doc. 63, Reply, 6–7. However, the Amended Complaint does not allege that the

detective relied on other information when concluding that S.M.A. was trafficked and such speculation is an insufficient reason to grant a motion to dismiss. *See Bryant*, 2024 WL 890122, at *3 ("But just as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

* * *

In sum, Backpage helped traffickers conceal the criminal nature of their advertisements, and Backpage had actual possession of each Plaintiff's advertisements. It is further plausible that Salesforce should have known of the facts establishing Backpage's knowledge based on the history between the two companies and the publicity that Backpage received for knowingly facilitating trafficking. Further, Plaintiffs have alleged that the advertisements of them contained apparent indicia of sex trafficking, and that Salesforce was aware of a general sex trafficking problem on Backpage's website. Thus, Plaintiffs have plausibly alleged that Salesforce had constructive knowledge of their specific § 1591 violations. Accordingly, the Court denies Salesforce's Motion to Dismiss as to all 30 Plaintiffs' § 1595(a) claims.

B.    *Plaintiffs Failed to State a Claim Under Texas Civil Practice and Remedies Code § 98.002(a).*

Plaintiffs also assert a claim against Salesforce under Chapter 98 of the Texas Civil Practice and Remedies Code, the Texas statute prohibiting human trafficking. The Court first rejects Salesforce's argument that Chapter 98 does not apply to Plaintiffs' claims because it would violate the presumption against extraterritoriality. The Court then holds that Chapter 98 creates three different "provisions" of civil liability. The first two provisions create liability for conduct that constitutes a criminal offense under Chapter 20A of the Texas Penal Code. The third provision creates civil liability when a defendant participates in a venture that traffics a plaintiff but where the

defendant does not violate Chapter 20A. Lastly, the Court finds that Plaintiffs have failed to allege that Salesforce had actual knowledge of their trafficking as necessary to state a claim under the second provision of Chapter 98.

1.  Chapter 98 Applies Extraterritorially to the Claims Asserted in This Lawsuit.

Salesforce argues that Plaintiffs failed to state a claim because Chapter 98 does not apply extraterritorially—i.e., to conduct outside of Texas—and 28 of the Plaintiffs were trafficked outside of Texas. Doc. 59, Br. Mot., 16. According to Salesforce, Plaintiffs' claims violate the presumption against extraterritoriality, which generally precludes enforcement of a state law beyond the jurisdiction of the enacting state absent a clear indication of legislative intent to the contrary. *Id.* The Court rejected this argument in a similar case, *A.S. v. Salesforce, Inc.*, No. 3:23-CV-1039-B, 2024 WL 4031496, at *4 (N.D. Tex. Sept. 3, 2024) (Boyle, J.), and will not repeat its analysis here. As the Court concluded in *A.S.*, even to the extent that Plaintiffs' allegations implicate applying a Texas statute extraterritorially, the Court holds that § 98.002 applies to the Plaintiffs' allegations.

2.  Chapter 98 Has Three "Provisions."

Before addressing whether Plaintiffs stated a claim under § 98.002(a), the Court must first establish what conduct the statute regulates. The Court holds that § 98.002(a) effectively contains three provisions that each create a cause of action. The first two provisions provide a civil cause of action if the defendant violates Chapter 20A of the Texas Penal Code, while the third provision provides a cause of action in cases where a defendant participates in a venture that traffics another person but where the defendant is not accused of violating Chapter 20A.

Section 98.002(a) imposes civil liability on any "defendant who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics

another person." TEX. CIV. PRAC. REM. CODE § 98.002(a). For the following reasons, the Court holds that § 98.002(a) applies to a defendant who (1) knowingly traffics another person and forces them to engage in certain prohibited conduct, (2) "intentionally or knowingly benefits from participating in a venture that traffics another person" and forces them to engage in certain prohibited conduct, or (3) "intentionally or knowingly benefits from participating in a venture that traffics another person" but does not force them to engage in any prohibited conduct. *See id.* Thus, the statute has three provisions that each create civil liability: (1) a direct criminal provision, (2) a criminal participant provision, and (3) a civil participant provision.

First, the "trafficking of persons" language in § 98.002(a) creates the direct criminal and criminal participant provisions because § 98.001 defines "trafficking of persons" as "conduct that constitutes an offense under Chapter 20A, Penal Code." *Id.* § 98.001. Chapter 20A of the Texas Penal Code makes it a criminal offense to knowingly traffic another person and then force the victim to engage in certain prohibited conduct, such as prostitution. TEX. PENAL CODE § 20A.02(a)(3). This is the direct criminal provision. Chapter 20A of the Texas Penal Code also makes it a crime to "knowingly . . . receive a benefit from participating in a venture" that traffics another person if the venture forces the person to engage in certain prohibited conduct. *Id.* § 20A.02(a)(4). This is the criminal participant provision.

Second, the "who intentionally or knowingly benefits from participating in a venture that traffics another person" language from § 98.002(a) creates the civil participant provision. TEX. CIV. PRAC. REM. CODE § 98.002(a). However, the text of the civil participant provision does not require plaintiffs to allege that the defendant committed an offense under Chapter 20A—i.e., it does not

require the plaintiff to allege she was forced to engage in any prohibited conduct after being trafficked. *See id.*

The text of § 98.002(a) indicates that the Texas Legislature intended for the civil statute to be broader than its criminal counterpart. Under § 98.002(a), a defendant is civilly liable if they "engage[] in the *trafficking of persons* or . . . intentionally or knowingly benefit[] from participating in a venture that *traffics another person*." TEX. CIV. PRAC. REM. CODE § 98.002(a) (emphasis added). Crucially, "trafficking of persons" has a different meaning than "traffics another person." The Penal Code defines "traffic" as to "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." TEX. PENAL CODE § 20A.01(4). "Trafficking of persons" is defined by the Civil Code as conduct that constitutes a criminal offense under Chapter 20A of the Texas Penal Code. TEX. CIV. PRAC. REM. CODE § 98.001. As discussed above, Chapter 20A of the Texas Penal Code makes it a crime to traffic another person and to then force the victim to engage in prostitution or other prohibited conduct. TEX. PENAL CODE § 20A.02. However, simply trafficking another person, without more, is not a crime under Chapter 20A. *See id.* § 20A.02(a).

The civil participant provision creates liability if a defendant participates in a venture that traffics another person but, unlike Chapter 20A, the civil participant provision does not also require the plaintiff to demonstrate she was forced to engage in any prohibited conduct. If a venture traffics another person—such as by transporting them—but does not force them to engage in any prohibited conduct, a defendant who participated in that venture is civilly liable under the civil participant provision of § 98.002(a), even though the defendant did not commit a criminal offense under Chapter 20A.

The Court must now determine the scope of the civil participant provision. A broad reading of the civil participant provision is inappropriate because it would make the criminal participant provision superfluous. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016) (noting that Texas courts "constru[e] [statutes] to avoid rendering any word or provision meaningless"). Thus, the Court must construe the civil participant provision to only regulate conduct that is not addressed by the criminal provisions.

The broadest possible reading of the civil participant provision would cover any time a defendant participates in a venture that traffics a plaintiff both when a plaintiff was forced to engage in certain prohibited conduct and when a plaintiff was not forced to engage in any prohibited conduct. However, the criminal participant provision already creates civil liability when a defendant participates in a venture that traffics a plaintiff where the plaintiff is forced to engage in prohibited conduct. Thus, if the Court adopted the broadest reading of the civil participant provision, it would also include the conduct expressly addressed in the narrower criminal participant provision. In other words, such an interpretation would mean the criminal participant provision does not do any work in § 98.002(a). *See United States v. Huerta-Rodriguez*, 64 F.4th 270, 279 (5th Cir. 2023) (rejecting an interpretation of a statute when such an interpretation would mean one "provision would do no work"). To avoid rendering the criminal participant provision meaningless, the Court will use the general/specific canon of statutory interpretation.

The general/specific canon of statutory interpretation provides that when a statute includes "a general authorization and a more limited, specific authorization," courts must interpret the general provision to avoid rendering the specific provision superfluous. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). This canon flows from the principle that "it is a

commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). In other words, if a statute has a general and specific provision, and the general provision appears to include conduct addressed in the specific provision, "the general [provision] must be taken to affect only such cases within its general language as are not within the provisions of the [specific] enactment." *RadLAX Gateway Hotel, LLC*, 566 U.S. at 646 (quoting *United States v. Chase*, 135 U.S. 255, 260 (1890)). Here, the general/specific canon of statutory interpretation requires that the civil participant provision only regulates participation in a venture when such participation does not result in a violation of Chapter 20A.

In § 98.002(a), the civil participant provision is a general provision that creates liability any time a defendant participates in a venture that traffics a plaintiff, while the criminal participant is a specific provision that only creates liability when a defendant participates in a venture that traffics a plaintiff and forces the plaintiff to engage in certain prohibited conduct. Thus, the Court must interpret the civil participant provision to only apply in cases where a defendant participates in a venture that traffics another person, but where the person is not forced to engage in any of Chapter 20A's prohibited conduct. *See id.* Such an interpretation will prevent the civil participant provision from swallowing the criminal participant provision and will give meaning to every word in § 98.002(a).

Salesforce argues that § 98.002(a) simply addresses the same conduct criminalized by Chapter 20A of the Texas Penal Code. *See* Doc. 63, Reply, 14–15. In effect, Salesforce argues that § 98.002(a) only imposes participant liability for cases where a defendant's participation in a venture is a crime under Chapter 20A. However, such an interpretation would render the civil participant provision superfluous because the "trafficking of persons" language in § 98.002(a) already imposes

civil liability on defendants who violate Chapter 20A by participating in a venture. *See Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 164. Therefore, the language creating a cause of action against any defendant "who intentionally or knowingly benefits from participating in a venture that traffics another person" must be addressing conduct other than that criminalized by Chapter 20A.[3]

In sum, to give effect to every word in § 98.002(a), the Court holds that the statute establishes three different "provisions" that each create civil liability. The first two provisions—the direct criminal and criminal participant provisions—provide a civil cause of action if the defendant commits a criminal offense under Chapter 20A of the Texas Penal Code. Meanwhile, the third provision—the civil participant provision—creates civil liability when a plaintiff is trafficked but only when their trafficking does not constitute an offense under Chapter 20A—i.e., when they are not forced to engage in certain prohibited conduct.

### 3. The Direct Criminal and Criminal Participant Provisions of § 98.002(a) Require Actual Knowledge of the Plaintiff's Trafficking.

The first two provisions—the direct criminal and criminal participant—impose civil liability on any defendant who has committed a criminal offense under Chapter 20A. Under these two provisions, a defendant is liable if they "knowingly traffic[] another person" and force them to engage in certain conduct, or if the defendant "knowingly receives a benefit from participating in a venture" that traffics a person and forces them to engage in certain conduct.

Because the first two provisions of § 98.002(a) only create civil liability if a defendant has violated Chapter 20A, the Court looks to the meaning of Chapter 20A to determine what Plaintiffs

---

[3] The Court previously noted in a similar case that "§ 98.002(a) seems to extend liability beyond that contemplated in Chapter 20A." *A.S. v. Salesforce, Inc.*, No. 3:23-CV-1039-B, 2024 WL 4031496, at *5 n.2 (N.D. Tex. Sept. 3, 2024) (Boyle, J.).

must allege to state a claim under the first two provisions. As relevant here, a defendant violates Chapter 20A if he knowingly:

> (3) traffics another person and, through force, fraud, or coercion, causes the trafficked person to engage in conduct prohibited by:
>     (A) Section 43.02 (Prostitution);
>     (B) Section 43.03 (Promotion of Prostitution);
>     (B-1) Section 43.031 (Online Promotion of Prostitution);
>     (C) Section 43.04 (Aggravated Promotion of Prostitution);
>     (C-1) Section 43.041 (Aggravated Online Promotion of Prostitution); or
>     (D) Section 43.05 (Compelling Prostitution); [or]
> (4) receives a benefit from participating in a venture that involves an activity described by Subdivision (3)

TEX. PENAL CODE § 20A.02(a)(3)–(4).

The word "knowingly" only appears at the beginning of Chapter 20A.02(a). *See id.* However, when a criminal statute uses the word "knowingly," the knowingly mens rea is usually required for every element of the crime. *See Delay v. State*, 465 S.W.3d 232, 247 (Tex. Crim. App. 2014); *see also United States v. X–Citement Video, Inc.*, 513 U.S. 64, 69, 73 (1994). Thus, a defendant only commits a crime under Chapter 20A if they either (1) have actual knowledge that they trafficked a person and then forced them to engage in certain conduct or (2) if they knowingly receive a benefit from participating in a venture and the defendant knows the venture both trafficked the person and forced the person to engage in certain prohibited conduct, such as prostitution. Therefore, a defendant only commits an offense under Chapter 20A if they knew a specific person was trafficked and if the defendant knew that specific person was forced to engage in certain prohibited conduct.

Thus, the criminal provisions require the plaintiff to allege that they were a victim of a Chapter 20A crime committed by the defendant, which requires demonstrating that the defendant had actual knowledge of the victim's trafficking. This means that, to state a claim under the criminal participant provision, a plaintiff must allege that the defendant violated Chapter 20A as to the

plaintiff. Therefore, a plaintiff asserting a claim under the criminal participant provision must allege that the defendant had actual knowledge of their specific trafficking to state a claim.

Additionally, the Court previously held that 18 U.S.C. § 1595 requires the defendant to have knowledge of the plaintiff's specific trafficking. Doc. 48, Mem. Op. & Order, 31. The Texas statute "closely resembles" the federal statute, *In re Facebook, Inc.*, 625 S.W.3d at 96, and the Court sees no reason that the Texas statute should not also require knowledge of the violation sued upon, as opposed to simply requiring general knowledge of trafficking violations.

Therefore, a defendant only commits a crime under Chapter 20A if they have actual knowledge that the victim was trafficked. Because the first two provisions of § 98.002(a) require the plaintiff to establish that the defendant violated Chapter 20A—i.e., that the defendant committed a crime—a plaintiff must allege that the defendant had actual knowledge of the plaintiff's trafficking to state a claim under the direct criminal and criminal participant provisions of § 98.002(a). Because Plaintiffs alleged that they were trafficked and forced to engage in prostitution (which is conduct prohibited by Chapter 20A), *see generally* Doc. 51, Am. Compl., their allegations arise under the criminal participant provision rather than the civil participant provision. Therefore, they must allege facts sufficient to allow the Court to draw the reasonable inference that Salesforce had actual knowledge of their specific trafficking.

Plaintiffs argue that § 98.002(a) does not require the defendant to have any knowledge of the Plaintiffs' trafficking. Doc. 62, Resp., 21–22. When making this argument, it appears that Plaintiffs rely on the civil participant provision.[4] *See id.* However, the civil participant provision does not apply to Plaintiffs' allegations because they have alleged that they were forced to engage in

---

[4] The Court need not determine whether the civil participant provision also requires actual knowledge of the plaintiff's trafficking because this provision does not apply to Plaintiffs' allegations.

conduct prohibited by Chapter 20A—i.e., that Salesforce committed a criminal offense—which means their claims fall under the criminal participant provision, *not* the civil participant provision. *See generally* Doc. 51, Am. Compl.

The Court holds that the civil participant provision does not apply here because Plaintiffs' claims are "specifically dealt with in" the criminal participant provision. *See RadLAX Gateway Hotel, LLC*, 566 U.S. at 646. Plaintiffs may not use the general provision—here, the civil participant provision—to circumvent the specific provision's actual knowledge requirement when their claim falls within the specific provision. *See id.* Therefore, Plaintiffs must allege that Salesforce had actual knowledge of their trafficking to state a claim under the criminal participant provision of § 98.002(a).

    4.   <u>Plaintiffs Have Failed to State a Claim Under the Criminal Participant Provision of § 98.002(A).</u>

Plaintiffs failed to state a claim § 98.002(a)'s criminal participant provision because they did not sufficiently allege that Salesforce had actual knowledge of their trafficking. While the Court found that Plaintiffs sufficiently alleged that Salesforce should have known of their trafficking, there is nothing to suggest that Salesforce had actual knowledge of their trafficking.

To state a claim under the criminal participant provision, Plaintiffs needed to allege that Salesforce had actual knowledge (1) that Plaintiffs were trafficked and (2) that they were forced to engage in certain prohibited conduct, such as prostitution. *See* TEX. PENAL CODE § 20A. 02(a)(3). The Texas Penal Code defines "[t]raffic" as to "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." *Id.* § 20A.01(4).

None of the Plaintiffs' allegations are sufficient to establish that Salesforce had actual knowledge that the Plaintiffs were trafficked and forced to engage in prostitution. While their

advertisements contained the indicia of human trafficking, that is insufficient to plausibly allege that Salesforce actually knew that each specific plaintiff would be forced to engage in prostitution. Plaintiffs have not alleged that Salesforce saw each of their advertisements. The Court has only concluded that Salesforce had constructive knowledge of the advertisements because of Salesforce's access to Backpage's network. And even if Salesforce had seen the advertisements, there are not enough facts for the Court to draw the reasonable inference that Salesforce knew each plaintiff was forced to engage in prostitution. While the advertisements allegedly contained the indicia of human trafficking, and Salesforce was generally aware of a sex trafficking problem on Backpage's website, there is nothing to suggest that Salesforce actually knew that each Plaintiff would be forced to engage in prostitution. For example, Plaintiffs do not allege that any Salesforce employees ever said Plaintiffs were likely being forced to engage in prostitution. Therefore, Plaintiffs have failed to allege that Salesforce had actual knowledge of their specific trafficking.

\* \* \*

In sum, § 98.002(a) creates civil liability for three types of conduct. The first two provisions create civil liability for conduct that constitutes a criminal offense under Chapter 20A of the Texas Penal Code. These criminal provisions both require alleging that the defendant had actual knowledge of the plaintiff's specific trafficking. The third provision is the civil participant provision, which creates civil liability for defendants who participate in a venture that traffics a person but only where the defendant did not violate Chapter 20A. Plaintiffs' claims fall under the criminal participant provision, and they failed to allege sufficient facts to allow the Court to draw the reasonable inference that Salesforce had actual knowledge of their trafficking. Accordingly, the Court grants Salesforce's Motion to Dismiss as to the Plaintiffs' § 98.002(a) claims.

C.    *The Court Dismisses the Plaintiffs' § 98.002(a) Claims with Prejudice.*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citations and emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

Here, Plaintiffs did not assert a claim under § 98.002 of the Texas Practices and Remedies Code until the Amended Complaint, but the Court previously addressed whether Plaintiffs had adequately alleged Salesforce's knowledge of their trafficking. Plaintiffs have again failed to include sufficient facts to allow the Court to draw the reasonable inference that Salesforce had actual knowledge of their trafficking. Therefore, the Court concludes it would be futile to grant them leave to amend their § 98.002 claim. *See id.* Accordingly, the Court will not grant leave to amend.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Salesforce's Motion to Dismiss (Doc. 58). Specifically, the Court **DENIES** the Motion with respect to Plaintiffs' 18 U.S.C. § 1595 claims. The Court then **GRANTS** the Motion with respect to Plaintiffs' Chapter 98 claims and **DISMISSES** these claims **WITH PREJUDICE**. In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), Salesforce must file an answer to the Amended Complaint within **fourteen (14)** days of this Order.

SO ORDERED.

SIGNED: March 21, 2025.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE